

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 FEB -9 PM 3: 21

U.S. DISTRICT COURT
N.D. OF ALABAMA

JENNIFER IVY, SHANNON )
KIKER, and ANGELA GRIGSBY, )
)
Plaintiffs, )
)
v. ) CV 99-BU-2373-S
)
HOOTERS OF AMERICA, INC.; )
HOOTERS OF BIRMINGHAM, )
INC.; and CHUCK STENSON, )
)
Defendants. )

**ENTERED**

FEB 0 9 2000

## Memorandum Opinion

This cause comes to be heard on three pending motions. The first is a motion filed January 2, 2000 by Defendant Chuck Stenson, requesting, pursuant to Fed. R. Civ. P. 55(c) and 60(b)(1), that the Court set aside a default judgment entered against him. (Doc. No. 19). The second is a motion filed January 4, 2000 by the Plaintiffs, Jennifer Ivy, Shannon Kiker, and Angela Grigsby, asking that the Court strike Stenson's motion to set aside the default judgment, his brief in support of that motion, and his answer, on the ground that neither Stenson nor his attorney signed those papers, as required by Fed. R. Civ. P. 11(a). (Doc. No. 23). And the third pending matter is an amended motion to set aside the default judgment against him (Doc. No. 25); that motion is distinguishable from the original motion requesting the same relief only by the fact that it has been signed by Stenson personally. The Court concludes that all three motions are due to be DENIED.

## I. BACKGROUND

Plaintiffs filed their complaint in this action on September 8, 1999, naming as defendants Hooters of America, Inc.; Hooters of Birmingham, Inc.; and Chuck Stenson (hereinafter collectively "Defendants"). In the complaint, Plaintiffs claimed that they were employed as waitresses by one or both of the two corporate Hooters defendants (hereinafter collectively "Hooters") and that Stenson, the restaurant's general manager, subjected them to "continuous sexual harassment." Complaint ¶ 12. Plaintiffs claimed that Stenson's harassing conduct subjected him to liability to pay damages under Alabama state law, for the torts of assault, battery, invasion of privacy, and intentional infliction of emotional distress. Plaintiffs asserted that Hooters is also liable for those same torts as they were committed by their employee, Stenson. Plaintiffs further allege that Hooters faces additional liability on claims of sexual harassment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; and negligent or malicious retention, supervision, and training of Stenson.

On October 28, 1999 Stenson was personally served with a copy of the complaint and a summons at his current place of employment, Romano's Macaroni Grill at The Summit in Birmingham. As specified by Federal Rule of Civil Procedure 4(a), the summons issued from this Court notified Stenson that he was required to serve upon Plaintiffs' attorneys at a given address a response to the complaint within 20 days after being served and that he also had to file a copy of his response with the Court. The summons also expressly warned, "IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT." (Emphasis original).

The 20-day period set forth in the summons for Stenson to answer the complaint, see Federal Rule of Civil Procedure 12(a)(1)(A), established a deadline of November 17,

1999, which came and went without any response from Stenson. On that same date, Stenson contacted the law firm representing Hooters. However, Hooters' counsel told Stenson that they could not represent him because of a potential conflict between his interests and those of Hooters. However, Hooters and their attorneys agreed to enter into a joint defense agreement with Stenson and to assist him with filing his answer with this Court, but Hooters' counsel explained that they could not assist him in any way until he signed such an agreement and advised Stenson to seek the advice of another attorney regarding the joint defense agreement. On November 18, 1999, Stenson received a draft copy of the joint defense agreement from Hooters' attorneys, but he did not sign it at that time.

On December 13, 1999, Plaintiffs filed a motion for an entry of default and a default judgment against Stenson, pursuant to Federal Rule of Civil Procedure 55. Stenson acknowledges that shortly thereafter, he received a letter from Hooters' attorneys inquiring about whether he would sign the joint defense agreement and further explaining the importance of his responding to Plaintiffs' motion for entry of default and default judgment, enclosing a copy of that motion. Nonetheless, as of fifteen days later, December 28, 1999, no response to the complaint was forthcoming either from Stenson or from someone on his behalf. On that same date three things occurred: (1) Plaintiffs filed an amended motion for entry of default and default judgment against him; (2) the Clerk of this Court entered a default against Stetson, pursuant to Fed. R. Civ. P. 55(a); and (3) Stenson signed the joint defense agreement and sent it overnight to Hooters attorneys. The following day, December 29, 1999, Hooters attorneys received the copy of the joint defense agreement Stenson signed. However, before Stenson received a copy of the entry of default against him, this Court entered a default judgment as to liability against him, with leave for Plaintiffs to prove damages at a trial by jury, pursuant to Fed.

R. Civ. P. 55(b)(2).

On December 30, 1999, Stenson, purporting to be without professional legal representation, filed an answer to the complaint, and on January 2, 2000, he filed a motion to set aside the default judgment, accompanied by a supporting legal brief. In his motion to set aside the default judgment, Stenson avers that he "has never been a party or a witness in a lawsuit before and, thus, is unfamiliar with the federal judicial system" and that he "is not represented by an attorney and can not afford to retain one . . . ." Motion to Set Aside Default Judgment (Doc. No. 25) at ¶ 2. Notwithstanding these averments, none of these papers was actually signed by either Stenson himself or a person ostensibly acting as his attorney; rather, Stenson directed that his name be signed by Hooters' attorneys, who now acknowledge that they "assisted" him in preparing these papers. Plaintiffs objected to these filings on the ground that they did not comport with Fed. R. Civ. P. 11(a) because Stenson had not personally signed them. On January 10, 2000, Stenson filed another motion to set aside the default judgment with a supporting brief, along with a proposed amended answer, with the only difference between these filings and the originals being that Stenson signed the more new ones himself.

## II. CONTENTIONS & ANALYSIS

### A. Motion to Strike

Plaintiffs argue that Stenson's original answer, his original motion to set aside the default judgment, and his original brief in support thereof are all due to be stricken because Hooters' attorneys signed Stenson's name to these papers, albeit at his direction. Plaintiffs claim that, as a pro se litigant, Plaintiff is required to personally sign his name to these papers under Fed. R. Civ. P. 11, which provides in pertinent part as follows:

> (a) Signature. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the

> party. . . . An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(Emphasis added). Citing the Supreme Court's decision in Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 126 (1989), Plaintiffs argue that Stenson could not validly direct another to person to sign his name to filed papers because, Plaintiffs contend, agency principles to not apply to signatures under Rule 11. The Court concludes, however, that because Stenson promptly substituted copies of his answer, motion to set aside the default judgment, and supporting brief with his own signature affixed, the question of whether the signing of Stenson's name by Hooters' attorneys at Stenson's direction is sufficient to satisfy the dictates of Fed. R. Civ. P. 11 is moot. Cf. Covington v. Cole, 528 F.2d 1365, 1369-70 n.7, 8 (5th Cir. 1976)[1] (holding that a district court had improperly dismissed with prejudice a pro se complaint where it was signed not by the plaintiff but by his wife as "attorney in fact"; while not resolving whether this was sufficient under Rule 11, the Court of Appeals directed the district court to give the plaintiff an opportunity on remand to sign the complaint himself so that the action might proceed). The Court can discern no purpose being served by striking Stenson's original documents given the signed copies on file, so the motion to strike will be denied. Thus, the Court's task is to determine on the merits whether Stenson is entitled to have the default judgment set aside.

### B. Motions to Set Aside the Default Judgment

In two motions, Document Numbers 19 and 25, Stenson moves the Court to set

---

[1] All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). Also binding precedent in the Eleventh Circuit are all of the post-September 30, 1981 decisions of Unit B of the former Fifth Circuit. Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir. 1982).

aside the default judgment entered against him. However, these motions both raise the same issue and appear to be distinguishable only by the fact that Stenson himself signed the latter one. Thus, the later filing is, in substance, but a substitute for the earlier one. Accordingly, the Court consolidates the two motions to set aside the default judgment for purposes of analysis.

A default judgment should not be reopened merely because the party in default requests it. McGrady v. D'Andrea Elec., Inc., 434 F.2d 1000, 1001 (5th Cir. 1970) (per curiam). Nor can the district court set aside a default judgment solely because it believes that a case ought to be decided on its merits. See African Methodist Episcopal Church, Inc. v. Ward, 185 F.3d 1201, 1202-03 (11th Cir. 1999). Rather, the court should require the defaulting party to show both that there was good reason for the default and that he has a meritorious defense to the action. McGrady, supra; see also Florida Physician's Insurance Co. v. Ehlers, 8 F.3d 780, 783 (11th Cir. 1993); Solaroll Shade and Shutter Corp., Inc. v. Bio-Energy Systems, Inc., 803 F.2d 1130, 1133 780, 783 (11th Cir. 1986).

In terms of what reasons will suffice, Fed. R. Civ. P. 55(c) provides that when a judgment by default has been entered, it may be set aside in accordance with Fed. R. Civ. P. 60(b). In turn, Fed. R. Civ. P. 60(b)(1), provides in pertinent part, "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons (1) mistake, inadvertence, surprise, or excusable neglect. . . ." Stenson cites this rule, focusing on the term "excusable neglect." Deciding whether a party's failure to comply with a filing deadline is attributable to "excusable neglect" under Fed. R. Civ. P. 60(b)(1), requires a court to make an equitable determination, examining all of the relevant circumstances surrounding the party's omission in light of four factors: (1) the danger of unfair prejudice to the other party; (2) the length of the delay and its potential impact on judicial

proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. Walter v. Blue Cross & Blue Shield United of Wisconsin, 181 F.3d 1198, 1201 (11th Cir. 1999) (citing Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 395 (1993).

In the instant case, the first two elements above weigh in favor of setting aside the default judgment. Stenson alleges that Plaintiffs will suffer no unfair prejudice if the default judgment is set aside, given that Plaintiffs still must prove their allegations as to Stenson's conduct in order to prove liability against Hooters. Plaintiffs have offered no examples of how they would be unfairly prejudiced, and the Court agrees with Stenson that the danger of such prejudice is minimal. Similarly, Stenson argues that the delay filing his answer, whatever its length,[2] will not hinder these judicial proceedings. This is because, Stenson alleges, Plaintiffs have not served interrogatories, requests for documents or requests for admission nor taken any depositions. Plaintiffs have not disputed these assertions as to the state of discovery or suggested how allowing Stenson back into the case to defend the claims against him would otherwise impede the orderly administration of these proceedings. The Court finds that, at this relatively early stage of the case, there is no reason to believe that setting aside the default judgment would have an adverse impact on this Court or its resources.

However, consideration of the third and fourth factors leads the Court to conclude that Stenson had actual notice of the suit against him and was aware that he had an obligation to respond but simply ignored that responsibility. Despite being personally

---

[2]Stenson was to file his answer to the complaint on or before November 17, 1999. He filed an initial answer with his name signed by one of Hooters' attorneys 43 days past the deadline, on December 30, 1999. His proposed amended answer, containing Stenson's own signature was filed 54 days after the deadline, on January 10, 2000.

served with the summons, which clearly advised him both of his duty to respond and the consequences flowing from the breach of that duty, and number of subsequent contacts by Hooters attorneys reminding him that he had to answer and of the importance of doing so promptly, Stenson did little or nothing until a default was entered against him 41 days after the deadline for him to respond had passed. Stenson gives several reasons for his failure to respond to the complaint in a timely fashion and why his conduct is not culpable. The Court, however, finds none of these justifications to be at all convincing under the facts of this case, and, as a result, that Stenson should have to live with the consequences of his actions.

      Stenson states that he has never been a witness or a party in a lawsuit before, that he is "unfamiliar with both the federal judicial system and its time deadlines," and that his "financial situation . . . does not afford him the luxury of retaining his own attorney who could advise him of the various time deadlines and other procedural requirements." Stenson Brief (Doc. No. 26) at 7. These circumstances, he asserts, prevented him from comprehending the nature of his legal responsibilities and the consequences of his failure to respond. As an initial matter, the Court notes that the summons states unambiguously and in conspicuous bold type that he had to respond to the complaint within 20 days and that if he failed to do so a judgment might be taken against him for the relief requested in the complaint. Stenson admits to having been personally served with the summons and a copy of the complaint, and he does not allege that he could not or did not read those documents. It is also clear that Stenson understood from the summons alone that he had to do <u>something</u> in response to the complaint, as on the very day his response was due, November 17, 1999, he sought out Hooters' attorneys for the first time. Stenson offers no reason why he waited until the last day upon which he might have filed a timely answer, but he admits that Hooters attorneys then discussed with him that he had to file

an answer. Given these facts, Stenson's assertion that he did not understand the concept of a 20-day deadline as set forth in the summons and that he needed his very own attorney to explain it to him rings hollow.

Further, when a party seeks to vacate a default judgment on the ground that he is an inexperienced pro se litigant, his access to some legal counsel makes his task of showing excusable neglect more difficult. Jones v. Phipps, 39 F.3d 158, 163 (7th Cir. 1994). Despite Stenson's claim that he is a pro se litigant who cannot afford access to legal counsel, he does not dispute having had substantial contact with Hooters' attorneys. Indeed, it is evident that they have ghost-written the entirety of his court filings thus far. In addition to Stenson's initial communication with Hooter's attorneys alluded to above, it is uncontroverted that Stenson received correspondence from Hooter's attorneys "shortly" after Plaintiffs filed their initial motion for a default and default judgment against him on December 13, 1999. At that time, Hooters attorneys reiterated to Stenson that he had to answer the complaint and explained the importance of responding to the motion for default judgment, a copy of which was enclosed. Despite receiving this information, there is no indication that Stenson took any steps whatsoever towards responding to the complaint until after a default was entered against him on December 28, 1999, and Stenson offers no reason for his inaction.

The Court would also note that to the extent Stenson was without assistance of legal counsel, that circumstance was largely of his own making. Hooters attorneys advised Stenson that they could not represent him because of a potential conflict of interest, but they also told him they would assist him in filing his answer and other relevant documents if he would enter into a joint defense agreement. Stenson was presented with a draft of such an agreement on November 18, 1999, the day after he was supposed to answer, but he failed to do anything with it until a default was entered against

him 40 days later. Stenson offers no explanation why he delayed pursuing the joint defense agreement and the assistance of Hooters attorneys that was offered to him thereby.

Finally, Stenson argues that the summons was unclear in that it supposedly "did not inform [him] how to respond [to the complaint] or where he should submit such a response." With respect to Stenson's assertion that the summons failed to apprize him of where he was to submit his response, it is patently false. The face of the summons clearly lists the full name and business address of Plaintiffs' counsel and the full address of this Court. Stenson makes no claim that he does not understand how to mail a letter to a given address. As to Stenson's claim that he did not understand precisely how he was to respond, it does not persuade the Court that he did not consciously disregard his legal responsibility in this case. If Stenson had, for example, sent a letter in a timely fashion to Plaintiffs' counsel or to this Court indicating in layman's terms that he did not do the things that the complaint alleges that he did or otherwise set forth his version of events, then the Court would likely be far more sympathetic to setting aside the default judgment, even if such a letter fell short of the requirements imposed by Fed. R. Civ. P. 12 for an answer or initial response, because such would at least show that Stenson was acting in good faith. See, e.g., Kinnear Corp. v. Crawford Door Sales Co., 49 F.R.D. 3 (D. S.C. 1970); Woods v. Severson, 9 F.R.D. 84 (D. Neb. 1948). Instead, Stenson sent nothing to anyone until a default was entered against him 41 days after his deadline passed. And this complete lack of action was in the face of (1) the summons, (2) his initial conversation with Hooters attorneys on November 17, 1999 about answering, and (3) those same attorneys' additional warnings soon after December 13, 1999 reiterating that he had to answer and respond to the motion for a default judgment. Given the lack of Stenson's effort to make any timely response at all until a default was entered, the Court

is unmoved by Stenson's plea that he did not know exactly what such a response would have been legally required to contain, especially given that he could have received at least the barest minimum of advice on that point from Hooters attorneys.

In sum, it appears to the Court that Stenson is arguing that excusable neglect is established where a pro se litigant simply sticks his head in the sand and hopes that doing so will make the whole lawsuit against him magically disappear. Unfortunately for him, in the real world there are consequences flowing from our decisions. The Court is aware that default judgments are disfavored because of the strong policy of determining cases on their merits. See Florida Physician's Ins. Co., 8 F.3d at 783. However, as the Court of Appeals for the Eleventh Circuit has recently explained,

> [The adversary system of justice] requires that the court have the power to compel parties to appear before it. The threat of default (and default judgment) is the court's primary means of compelling defendants in civil cases to appear before the court. If these defaults could be put aside without cause, the threat of default would be meaningless, and the courts would lose much of their power to compel participation by civil defendants.

African Methodist Episcopal Church, Inc. v. Ward, 185 F.3d 1201, 1203 (11th Cir. 1999). In this case, Stenson has failed to establish that his failure to respond to the complaint was caused by excusable neglect, within the meaning of Fed. R. Civ. P. 60(b)(1). As a result, the Court need not address whether or not Stenson might have had a meritorious defense to the claims against him. See Florida Physician's Ins. Co., 8 F.3d at 783-84 (affirming district court's denial of Rule 60(b)(1) motion to set aside default judgment based solely on the defendant's failure to show good cause); Gibbs v. Air Canada, 810 F.2d 1529, 1537 (11th Cir. 1987) (declining to consider the "meritorious defense" issue after determining that the defaulting defendant had not shown good cause). Stenson's motion to set aside the default judgment against him is due to be denied.

### III. CONCLUSION

The Court concludes that Plaintiffs' motion to strike Stenson's initial motion to set aside the default judgment, his initial brief in support of that motion, and his initial answer, on the ground that neither Stenson nor his attorney signed those papers (Doc. No. 23) is due to be DENIED. However, Stenson's victory on Plaintiffs' motion to strike is a pyrrhic one, as the Court determines that Stenson's initial and amended motions to set aside the default judgment against him (Doc. Nos. 19 and 25) are due to be DENIED as well.

DONE and ORDERED this 8th day of February 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE